IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES HENRY CARR, JR.,          No. CIV S-05-1139-LKK-CMK-P

        Plaintiff,

   vs.                                        FINDINGS AND RECOMMENDATIONS

MARGARITA PEREZ, et al.,

        Defendants.

                           /

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion to dismiss (Doc. 28). Also before the court is defendants' request for judicial notice (Doc. 29).

**I.  BACKGROUND**

        Plaintiff names as defendants to this action Margarita Perez and Susan Fisher, both of whom are former members of California's parole board. As outlined in the court's January 17, 2006, order, "plaintiff is . . . challenging the constitutionality of the procedures employed during his parole hearing." The order concluded that plaintiff's claim is not a

1

challenge to the fact or duration of his confinement, which would not be cognizable under § 1983. See Wilkinson v. Dotson, 544 U.S. 74 (2005).[1] The order also concluded that, because the action proceeds against defendants in their official capacity and seeks prospective declaratory and injunctive relief only, the Eleventh Amendment does not bar suit. See Armstrong v. Wilson, 124 F.3d 1019 (9th Cir. 1997).

## II. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true and must construe them in the light most favorable to the plaintiff. See Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily

---

[1] This is not to say that plaintiff's complaint necessarily states a substantive claim for relief.

1  lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,
2  688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,
3  see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson
4  v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).
5        Finally, leave to amend a deficient complaint must be granted ". . . [u]nless it is
6  absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corrections, 66
7  F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th
8  Cir. 2000) (en banc).

10  **III.  DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

11        Defendants request that the court take judicial notice pursuant to Federal Rule of
12  Evidence 201 that: (1) defendants are no longer members of the parole board; and (2) a copy of
13  the California Supreme Court's decision in plaintiff's case was "in the Board packet for
14  Plaintiff's August 11, 2004, parole suitability hearing." In support of the latter request,
15  defendants offer their counsel's declaration that, when he reviewed the packet, "there was a copy
16  of the California Supreme Court's decision in People v. Carr, California Supreme Court Criminal
17  Case No. 13829."
18        Under Rule 201(b), judicially noticeable facts are those which are either generally
19  known within the jurisdiction or capable of accurate and ready determination by resort to sources
20  whose accuracy cannot reasonably be questioned. The court finds that the fact that defendants
21  are no longer members of the parole board meets this standard. As to whether the California
22  Supreme Court's decision in plaintiff's case was included in the packet for the August 11, 2004,
23  hearing, the court finds that the Rule 201(b) criteria are not met. Obviously, it is not generally
24  known in the jurisdiction.  In addition, counsel's declaration does not satisfy Rule 201(b).
25  While counsel's declaration certainly constitutes competent evidence of the fact, it is not a
26  source whose accuracy cannot be reasonably questioned. For example, even if the California

Supreme Court's decision was included in the packet reviewed by counsel, that does not necessarily mean that it was included in the packet which the board members reviewed in 2004.

Even though the court cannot take judicial notice that the California Supreme Court decision in plaintiff's case was included in the file considered by the parole board at the 2004 hearing, the court can presume the fact to be true. See Barnett, 31 F.3d at 816 (holding that all allegations of material fact must be accepted as true and construed in the light most favorable to the plaintiff). In the complaint, plaintiff states: "[T]he defendants ignored the [California] Supreme Court's decision in Plaintiff's central file. . ." From this, the court can presume that the decision was, in fact, in plaintiff's file. Plaintiff attaches to the complaint a transcript of the August 11, 2004, parole hearing. This transcript reflects that defendant Fisher said: "We've had the opportunity to review your files here and we'll give you the opportunity to make any corrections that you need to today for the record. . ." From this, the court can presume that plaintiff's file was, in fact, considered by the board. Therefore, it follows logically that the California Supreme Court decision was in the file considered by the board.[2]

Defendants' request for judicial notice should be granted in part and denied in part. It is appropriate to take judicial notice that defendants are no longer members of the parole board. It is not appropriate to take judicial notice that the California Supreme Court's decision in People v. Carr was included in the packet reviewed by the parole board for the August 11, 2004, suitability hearing. That fact, however, has been admitted by plaintiff and is not disputed.

## IV. DISCUSSION

Plaintiff is attempting to state constitutional claims arising from the denial of parole in 2004. According to plaintiff, "he has been denied due process of law through the improper use of amended, post-1977 guidelines and criteria at his parole hearing." Plaintiff also

---

[2] This does not necessarily mean that the board actually considered the decision in 2004. It just means that it was available in the file.

asserts that the parole board violated both his due process rights and California rules and regulations which require all available information to be considered because defendants did not rely on "relevant information in plaintiff's California Supreme Court appellate decision . . ." Plaintiff further asserts that defendant Fisher's ". . . biased re-characterization of plaintiff's commitment offense, with make shift findings in excess of the defined minimum elements for plaintiff's first degree felony murder conviction, was a blatant violation of . . . due process . . ." Plaintiff also claims that it was unfair for his hearing to have been conducted by a two-member panel, as opposed to a three-member panel.  Plaintiff claims that "he was denied a full and fair hearing when . . . the defendants referenced selected comments in [plaintiff's] rebuttal to Gov. Gray Davis' letter reversing plaintiff's [prior] parole grant."[3]  Finally, plaintiff argues that defendants' finding that he would not be suitable for parole for at least two years constituted a due process violation and an ex post facto violation.

Because plaintiff is asserting that the August 11, 2004, parole hearing was unfair, the court concludes that he is attempting to state claims based on violations of due process. Plaintiff, clearly, also asserts various ex post facto violations.  Finally, it appears that plaintiff argues that defendants' conduct was in violation of applicable state law.  In their motion to dismiss, defendants argue that plaintiff fails to state any claim based on either due process or ex post facto violations.  Defendants also argue that, because they are former members of the parole board, they should be dismissed.  Finally, they argue that any claims based on violations of state law are not cognizable under § 1983.

Before addressing whether plaintiff's allegations state claims for relief based on either due process or ex post facto violations, the court will address defendants' contention that this action cannot proceed against them because they are no longer members of the parole board. State officials sued in their official capacity for injunctive relief are considered persons for

---

[3] In 2003, the board had decided that plaintiff was suitable for parole.  That decision, however, was reversed by the governor.

purposes of § 1983.  See Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320 (9th Cir. 1991).  Such suits are merely an alternative way of pleading an action against the entity for which the defendant acts officially.  See Kentucky v. Graham, 473 U.S. 159 (1985).

In the complaint, plaintiff alleges that defendant Perez "is employed as Commissioner and Chairperson" of the California Board of Prison Terms.  Similarly, plaintiff alleges that defendant Fisher is a parole board Commissioner.  By use of the present tense verb "is" instead of the past tense verb "was," and because there is no evidence before the court to establish otherwise, the court concludes that, at the time plaintiff filed the complaint, defendants were members of the parole board.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), "[w]hen a public officer is a party to an action in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party."  Moreover, any misnomers not affecting the substance of the suit are to be disregarded.  See id.  Finally, "[a] public officer who . . . is sued in an official capacity may be described as a party by the officer's official title rather than by name."  Fed. R. Civ. P. 25(d)(2).

Here, because defendants were active members of the parole board at the time the suit was filed, and because this is an official capacity suit seeking prospective injunctive relief, the substitution of defendants' successors was automatic when defendants ceased their official roles.  For this reason, it would not be appropriate to dismiss the action simply because defendants are no longer members of the parole board.

Next, the court addresses defendants' argument that any claims based on violations of state law are not cognizable under § 1983.  As a general rule, defendants are correct.  See Ove v. Gwinn, 264 F.3d 817 (9th Cir. 2001).  Where, however, a violation of state law is also a violation of due process, § 1983 does provide a cause of action.  See Draper v. Coombs, 792 F.2d 915 (9th Cir. 1986).  Therefore, the court will consider plaintiff's assertions based on violation of state law in the context of a due process analysis.

///

Turning now to plaintiff's allegations, the overriding theme of the complaint is that the August 11, 2004, parole hearing was not fair. Thus, plaintiff is alleging that his due process rights were violated.[4] In the parole context, procedural due process requires that: (1) the inmate be provided an opportunity to be heard; and (2) where parole is denied, the inmate be provided with an explanation for the denial. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979); Wilkinson v. Austin, 545 U.S. 209 (2005) (citing Greenholtz). Substantive due process requires that "some evidence" support the decision to deny parole. See Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006) (adopting the standard announced in Superintendent v. Hill, 472 U.S. 445, 455 (1985)).

### A.  Application of Suitability Criteria Enacted After Offense Committed

Plaintiff claims that his parole hearing was not fair because the board applied suitability criteria under California's determinate sentencing law, which was adopted after his 1969 commitment offense. Specifically, plaintiff asserts an ex post facto violation, reasoning that application of criteria harsher than were in place when he committed his offense essentially subjects him to a longer sentence. As an example, plaintiff states that, "[u]nder the pre-1977 . . . guidelines, plaintiff would not be subject to multi-year denials of parole."[5] By way of background, defendants offer the following history:

> Before the legislature enacted the Determinate Sentencing Law (DSL) in 1976, California sentenced criminals under the Indeterminate Sentencing Law (ISL).
> The ISL actually had two types of sentences, indeterminate terms and life terms. . . Life terms were reserved for the most serious crimes, including first degree murder. Prisoners sentenced to a life term were subject to a lifetime of supervision, either in prison or on parole. The parole board had no authority to set a maximum release date at less than life.

---

[4]  Plaintiff asserts that certain of his claims also give rise to ex post facto violations.

[5]  This particular claim is discussed in more detail in section IV.E.

7

Under the ISL, life term inmates had to be found suitable for parole just as they are today. The first step in this process was for the Adult Authority, the precursor of today's Board of Parole Hearings, to make a determination regarding the inmate's parole suitability. Only after an inmate was found suitable did the Adult Authority set a release date.

Before 1976, there were no formal regulations governing parole suitability. Rather, the Adult Authority had virtually unlimited discretion in determining a life term inmate's suitability. The first parole suitability regulations, called the Parole Board Rules (PBR), were established in 1976.

These rules provided that an inmate was unsuitable for parole if "in the opinion of the hearing panel an unreasonable risk of danger to society would be posed by release." Although the rules provided examples of factors that the Community Release Board, which had replaced the Adult Authority, could use in determining an inmate's suitability, these factors were not exclusive. The board retained great discretion under the PBR, and the primary issue was whether the danger to the public outweighed the inmate's interest in and suitability for release.

In 1978, after the passage of the DSL, the Board of Parole Terms, now the Board of Parole Hearings, enacted new regulations governing parole suitability hearings. Under these regulations, inmates still have to go through a two-step process before being released on parole. Enacted primarily to achieve uniformity of sentences, the changes in the regulations mostly concerned the second part of the process – the setting of a release date once the Board found the inmate suitable for parole. The primary concern at the first stage of the process remained the inmate's risk of danger to society if released. The regulations provide factors tending to demonstrate suitability and unsuitability, but these are only guidelines. As before, the Board retains significant discretion and is to consider "[a]ll relevant, reliable information."

Defendants cite Connor v. Estelle, 981 F.2d 1032 (9th Cir. 1992) (per curiam), in support of their argument that plaintiff's ex post facto claim is foreclosed as a matter of law. In Connor, the prisoner was sentenced to life in prison under the ISL. See id. at 1033. However, he was denied parole four times because he was found unsuitable for release under the DSL in place at the time of the parole hearings. See id. The prisoner made the same argument plaintiff raises in this case: "Connor argues that by considering him for parole under the DSL guidelines, rather than the ISL guidelines, the Board of Prison Terms (BPT) violated the prohibition against ex post facto laws." Id. In Connor, the Ninth Circuit agreed with California courts which had addressed the issue and concluded that, because application of the DSL guidelines does not disadvantage prisoners sentenced under the ISL, there can be no ex post facto violation. See id.

at 1034 (citing In re Duarte, 143 Cal. App. 3d 943 (3rd Dist. 1983), and In re Seabock, 140 Cal. App. 3d 29 (1st Dist. 1983)).

Plaintiff cites Brown v. Palmateer, 379 F.3d 1089 (9th Cir. 2004), in his opposition. Initially, the court observes that, in Brown, the prisoner was an Oregon inmate challenging denial of parole under Oregon law. See id. at 1091. In that case, the state passed a statute after Brown committed his crimes which changed the method by which it was decided whether to postpone a parole date. See id. The old law required a "psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the . . . community." Id. (citing Or. Rev. Stat. § 144.125(3) (1991)). The new law did not require a mental health diagnosis, but allowed the parole board to make the determination on its own. See id. (citing Or. Rev. Stat. § 144.125(3)(a) (1993)). The Ninth Circuit held that the new law created a "'sufficient risk' of increased punishment" and, as a result, constituted an ex post facto violation. See id. at 1095 (citing Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003)).

The court finds Connor to be the more applicable authority. Specifically, Brown is inapplicable because it considered a change to Oregon law, not California law. In Connor, the Ninth Circuit considered the same argument raised by plaintiff in this case and rejected it. This court is bound to follow Connor.

This conclusion is not inconsistent with the Supreme Court's decision in Wilkinson v. Dotson, 544 U.S. 74 (2005). In Wilkinson, two state prisoners brought a § 1983 action for declaratory and injunctive relief, alleging that Ohio's parole procedures are unconstitutional because they allowed application of harsher guidelines adopted after the commitment offense date. See id. at 76. First, the Court held that the claim could proceed in the context of a § 1983 action and did not need to be raised in a habeas corpus petition, as the district court had concluded. See id. at 81. The Court did not, however, address the merits of the claim. Thus, while the Court in Wilkinson said that it was possible to allege this kind of constitutional challenge under § 1983, the Court did not say that the allegations actually stated a claim.

9

1    Rather, it remanded for further proceedings.[6]  Moreover, <u>Wilkinson</u> involved application of
2    Ohio's parole scheme, and not California's.  Therefore, <u>Wilkinson</u> is distinguishable on the facts.

        **B.**       **<u>Evaluation of Plaintiff's Commitment Offense</u>**

Plaintiff asserts two constitutional violations concerning the parole board's evaluation of the facts of his commitment offense.  He argues that his hearing was unfair because the board ignored the facts as set forth in the California Supreme Court's decision in his criminal case.  Plaintiff also argues that his hearing was unfair because the board redefined his offense as constituting crimes carrying a more severe penalty.  Because these allegations do not relate to procedural requirements, they must relate to substantive due process.

        1.       <u>Consideration of Facts Set Forth in California Supreme Court's Decision</u>

Plaintiff asserts that defendants failed to consider the facts as described in the California Supreme Court's decision in his case, instead relying on their own version of plaintiff's commitment offense.  Specifically, plaintiff alleges:

> . . . As the hearing unfolded, defendant FISHER stated that the Panel would be reading from the current (Correctional Counselor's) Board report for a description of the commitment offense.  However, in so doing, the defendants ignored the [California] Supreme Court's decision in Plaintiff's central file, that reliably documented circumstances of the commitment offense, as set forth in <u>People v. Carr</u>.  (citation omitted).

As discussed above, substantive due process requires that "some evidence" support the decision to deny parole.  Therefore, for plaintiff to state a prima facie claim based on denial of substantive due process, he must allege that the failure to consider the facts as set forth in the California Supreme Court's decision somehow means that the decision in 2004 was not based on some evidence.

/ / /

/ / /

---

[6] The Northern District of Ohio's docket for this case reflects that, ultimately, the district court granted defendants' motion to dismiss.  An appeal of that decision is pending.

Plaintiff attaches to the complaint a complete transcript of the August 11, 2004, parole suitability hearing, which this court may consider when deciding a motion to dismiss. See Branch, 14 F.3d at 454. This transcript clearly shows that the parole board considered several items of evidence, in addition to the facts of plaintiff's commitment offense as outlined in the correctional counselor's report. For example, a chief deputy district attorney testified at the hearing and argued against granting parole. In addition, the transcript shows that the board considered, among other things, plaintiff's file, plaintiff's prison history, a current psychological evaluation, plaintiff's parole plans, and plaintiff's statements at the hearing. These facts, as set forth in the complaint and which the court must assume to be true, show that the board's decision was based on a number of pieces of evidence. Therefore, because plaintiff cannot allege that the board's decision was not based on "some evidence," plaintiff's complaint does not state a claim based on denial of substantive due process. Assuming, as the court must, that defendant Fisher ignored the California Supreme Court decision available in the file, it cannot amount to a due process violation given other facts alleged in the complaint.

          2.          Characterization of Plaintiff's Commitment Offense

Plaintiff claims that the 2004 parole suitability hearing was unfair because defendants re-characterized the facts of his commitment offense as constituting crimes carrying a harsher sentence. He specifically asserts that this ". . .violates the applicable legal principles of judicial construction established by the California state courts." As legal authority supporting his claim, plaintiff cites In re Rosenkrantz, 29 Cal. 4th 616 (2002), as follows:

> . . . When weighing the seriousness of his criminal conduct to determine whether (Plaintiff) would pose a threat to public safety if paroled, the Board is not free to disregard his (conviction under the felony/murder rule) and the concurrent (4-year) terms for robbery. . . The Board's broad discretion over parole suitability determinations is not a license to re-characterize the commitment offense as crimes carrying a more severe penalty. (citations omitted).

///

///

First, to the extent plaintiff is challenging defendants' application of California regulations governing parole suitability determinations, as explained in <u>Rosenkrantz</u>, such a claim is not cognizable under § 1983 unless there is also a prima facie due process violation. Next, as discussed above, to state a claim based on violation of substantive due process in the parole context, plaintiff must allege that the decision to deny parole was not based on "some evidence." As with his allegation that defendants improperly ignored the California Supreme Court decision when evaluating the facts of his commitment offense, given the totality of the facts presented in the complaint, plaintiff cannot make this allegation. The court concludes, therefore, that plaintiff's complaint does not state a claim for relief based on his allegation that the defendants improperly re-characterized the facts of his commitment offense.

    **C.**    **Consideration of Plaintiff's Prior Parole Decisions**

Plaintiff's claim is as follows:

> The Plaintiff further alleges that he has been denied a full and fair hearing when, acting as his own attorney, the defendants referenced selected comments in [plaintiff's] rebuttal to Gov. Gray Davis' letter reversing plaintiff's parole grant, as findings in support of finding plaintiff unsuitable for parole. Such conduct by defendants is a clear violation of the First and Fourteenth Amendment guarantee of the U.S. Constitution, and in contravention of the tenet set forth in [California] Penal Code Section 5011(b).

In support of this claim, plaintiff alleges the following facts:

> After defendant FISHER read Governor Gray Davis' parole grant reversal letter into the record of the parole hearing . . . I was asked if I "would you like to close and you can incorporate the response to the Governor's decision in any way that you think is the best."
>
> Responding thereto, presenting a rebuttal to Governor Davis' reversal letter, I stated that, "This is in response to Gray Davis' parole grant reversal." After refuting all six items specific to Davis' reversal letter, I informed the panel, "That ends my rebuttal to the Governor's letter, Commissioners."

The complaint does not offer more.

///

1  These allegations fail to state a claim for relief for at least two reasons. First,
2  plaintiff does not specify which comments defendants selected or how defendants made
3  reference to such comments in support of the unsuitability finding. Second, as with the
4  allegations discussed above, plaintiff's complaint cannot state a prima facie substantive due
5  process violation given the totality of the facts alleged. In particular, the facts alleged in the
6  complaint clearly show that the 2004 parole denial was based on some evidence other than any
7  reliance on plaintiff's rebuttal. While the first defect could theoretically be cured through
8  amendment of the complaint, the second defect cannot.

### D.  Use of a Two-Member Hearing Panel

Plaintiff alleges that his hearing was unfair because it was conduced by a two-member panel rather than a three-member panel. Plaintiff reasons as follows:

> . . . The July 30, 2001, amendment to [California] Penal Code, section 304a(d) reducing the number of commissioners that a life prisoner may appear before from three to two can result in a tie decision. BPT policy require[s] that a hearing panel's tie decision for and against the grant of parole, shall be referred to an en banc panel. Sudden illness can also result in eight commissioners. As a consequence, all even-numbered, en banc panels reviewing the tie decision of a parole panel, where the vote tally is a 4-4 tie is automatically denied parole.

Plaintiff asserts that the 2001 amendment results in an ex post facto violation as well as a due process violation.

From these allegations, it appears that plaintiff is claiming that a two-member panel increases the possibility of an initial tie vote, which results in an increased possibility of a tied en banc vote, which results in a greater possibility that parole will be denied. This logic clearly stems from the observation that one dissenting vote denying parole on a two-member panel results in a tie, whereas on a three-member panel the other two panel members overrule the lone dissenter and there can never be a tie.

/ / /

/ / /

In their motion to dismiss, defendants counter that, even if plaintiff's hearing had been conducted by a three-member panel, the result would have been the same because the two members that actually heard plaintiff's case agreed that he was not suitable for parole. Therefore, a third vote in plaintiff's favor would not have changed the result. Given that plaintiff's claim goes to the increased <u>risk</u> of tie vote on a two-member panel, which is axiomatic because a three-member panel cannot reach a tie vote, defendants' argument does not quite address plaintiff's assertion. Even though defendants are correct that the result in plaintiff's case would have been the same either way, this does not mean that plaintiff was not exposed to a greater risk of a tie vote by going before a two-member panel.

Ultimately, however, plaintiff's allegation of an increased risk of a tie vote does not state a claim because it is too speculative and, therefore, not a live controversy. If the two-member panel had actually reached a tie in plaintiff's case, and if the subsequent en banc panel also reached a tie, then plaintiff might be able to complain that, as a result of the 2001 change in procedure, he was actually harmed. This conclusion – that plaintiff cannot allege any harm based on the facts in the complaint – is distinguishable from defendants' conclusion that, essentially, any error was harmless because the result would not have been any different even absent the error. The court does not find that using a two-member panel was erroneous on the facts of this case as alleged in the complaint.

### E.   Two-Year Unsuitability Determination

Plaintiff claims that his hearing was unfair because the board employed a rule adopted after his offense date which allows subsequent parole suitability hearings to be deferred for two years in any case where the board finds that it is not reasonable to expect that parole would be granted any sooner and states reasons. Plaintiff asserts both due process and ex post facto violations.

///

///

As explained by defendants, in 1981 the rules were amended to authorize the board to defer subsequent parole suitability hearings for up to three years if, among other things, the prisoner had been convicted of more than one offense involving the taking of a life.  The rules were later amended to the version applied in plaintiff's case.  In California Dept. of Corrections v. Morales, 514 U.S. 499 (1995), the Supreme Court addressed whether application of the 1981 amendment to parole hearings relating to crimes which occurred before 1981 constituted an ex post facto violation.  In concluding that it did not, the Court held that the amendment did not change the sentencing range for crimes covered by the amendment, but merely altered the method for fixing a release date under identical substantive standards.  See id. at 507.

In their motion to dismiss, defendants argue that the reasoning of Morales applies equally to the current version of the rules.  Specifically, defendants assert that, like the 1981 version considered by the Supreme Court, the current version applied in plaintiff's case does not alter the substantive standard that the board must make a separate determination that it is not likely that the inmate would be suitable for parole sooner and state its reasons.  Rather, as in Morales, the current rules only alter the method for fixing a release date once such a finding is made.  The court agrees that the reasoning in Morales applies to plaintiff's challenge to the current version of the rules governing the decision to defer future parole suitability hearings.

As to whether plaintiff's allegations concerning application of the current rules state a claim based on violation of due process, the court concludes that they do not.  It is clear from the complaint as a whole that plaintiff was both given the opportunity to be heard and a statement of the reasons parole was denied.  Therefore, the complaint does not state a claim based on a violation of procedural due process.  Similarly, as with plaintiff's other substantive due process claims, the totality of the facts set forth in plaintiff's complaint, and in particular the transcript of the 2004 parole hearing plaintiff attaches, shows that the decision to deny parole was based on "some evidence."

## V.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that:

1. Defendants' request for judicial notice be granted in part and denied in part, as outlined herein;

2. Defendants' motion to dismiss be granted; and

3. This action be dismissed and the Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 16, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE